UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

SPIDER LABS, LTD.,

    Plaintiff,

- Against -

JOHN DOE,

    Defendant.

-------------------------------------------------------

**Civil Action No.**

**COMPLAINT AND JURY DEMAND**

Plaintiff Spider Labs, Ltd. ("Spider Labs" or "Plaintiff"), by and through its attorneys of record and for its Complaint and Jury Demand against Defendant John Doe ("Doe" or "Defendant") states and alleges as follows:

## PARTIES

1. Spider Labs is a Japanese corporation f/k/a Phybbit, Ltd. with its principal place of business in Tokyo, Japan.

2. Doe is an unknown individual or individuals[1] who use the alias "Jeff Katzenberg." Upon information and belief, Doe lives in this jurisdiction.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 (diversity) as this action is between a foreign citizen and a United States citizen and more than $75,000 is in dispute and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

---

[1] Plaintiff intends to file a Motion for Expedited Limited Discovery that will authorize it to serve subpoenas to obtain information to determine the identity of John Doe.

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, John Doe resides in this judicial district and because a substantial part of the events giving rise to Spider Lab's claim occurred in this judicial district.

**GENERAL ALLEGATIONS**

5. Spider Labs is a cybersecurity software as a service provider based in Tokyo, Japan with a research development center in Lisbon, Portugal. Its mission is to help build a safer and happier Internet experience using automation.

6. Spider Labs was founded in 2011 by Satoko Ohtsuki, a young entrepreneur and recent university graduate. Through the efforts of Ms. Ohtsuki and Spider Labs' dedicated staff, Spider Labs has continued to grow and to raise money through outside investment.

7. Programmatic digital advertising fraud ("Ad Fraud") is a deliberate, malicious activity that manipulates the delivery of digital advertising content and prevents digital advertising from being served to the target audience. Many perpetrators of Ad Fraud utilize malicious bots to interfere with the delivery of targeted, digital advertising.

8. Advertising Technology ("Ad Tech") is an umbrella term that describes systems of analyzing and managing tools for programmatic advertising campaigns. It generally covers the entirety of the digital advertisement delivery process from selecting the subject of a digital advertisement to choosing its recipient.

9. It is estimated that companies spend tens of billions of dollars each year on digital advertising provided by companies that specialize in Ad Tech. As much as $1 out of every $3

spent on online digital advertising is snatched, altered, manipulated, or redirected by perpetrators of Ad Fraud.

10. Although smaller than many of its competitors, Spider Labs is a leading provider of anti-Ad Fraud services to Ad Tech companies in Japan, Korea, and the United States.

11. Spider Labs' primary service, SpiderAF, is an anti-Ad Fraud software platform that uses automation to enable customers to detect, prevent, and report Ad Fraud.

12. Spider Labs has received numerous industry recognitions. Among other things, Spider Labs in February 2020 received the "certified against fraud" seal from the Trustworthy Accountability Group ("TAG"). Spider Labs was the first company in the Asian-Pacific region to receive such a certification.

## Doe's Illicit Activities

13. Upon information and belief, on February 25, 2020, mere days after Spider Labs received its certification from TAG, John Doe, using the alias "Jeff Katzenberg," registered the domain name www.fightclickfraud.com.

14. On June 15, 2020, one of Spider Labs' customers, MOLOCO, Inc., a leading mobile Ad Tech company, contacted Spider Labs and informed them that they had received an email from John Doe, again using the name "Jeff Katzenberg."

15. In the email, John Doe made a number of defamatory statements attacking Spider Labs. Among other things, John Doe asserted that:

    a. Spider Labs defrauded its clients,

    b. SpiderAF did not protect against Ad Fraud,

    c. SpiderAF could not detect Ad Fraud, and

    d. SpiderAF was not based on artificial intelligence.

  16. John Doe also asserted that he had "hired a team of engineers" to "test" SpiderAF and that his assertions were based on such testing.

  17. The assertions made by John Doe in the June 15, 2020 email to MOLOCO were false and defamatory.

  18. After learning of John Doe's email from MOLOCO, Spider Labs immediately launched an investigation.

  19. During its investigation, Spider Labs identified an Internet Protocol ("IP") address that it reasonably believes is associated with John Doe.

  20. Based on publicly-available information, Spider Labs reasonably believes that John Doe's IP address was used in this judicial district at the time MOLOCO received the defamatory email.

  21. Using John Doe's IP address, Spider Labs was able to determine that, on June 15, 2020, John Doe viewed several posts on Spider Labs' website that described client use cases, including MOLOCO. The viewed clients also included ValueCommerce Co., Ltd. ("ValueCommerce") one of Japan's leading providers of e-commerce and Internet marketing solutions; United, Inc., Japanese company that provides an advertising monetization platform known as "AdStir"; UNICORN, a fully automated marketing platform offered by Bulbit, Inc., a subsidiary of Adways, Inc. ("UNICORN"); and i-mobile Co., Ltd. ("i-mobile"), one of the largest advertising platform providers in Japan.

  22. After identifying John Doe's suspicious behavior, Spider Labs contacted ValueCommerce, United, UNICORN, and i-mobile, as well as other clients and customers.

4816-4667-7954.2

23. ValueCommerce, United, UNICORN, and i-mobile each confirmed that they had received an email on June 15, 2020 from John Doe, again using the alias "Jeff Katzenberg" and the email address jeff.k@fightclickfraud.com.  Each email was virtually identical to the email John Doe sent to MOLOCO.

24. The email from John Doe to ValueCommerce specifically encouraged ValueCommerce to replace Spider Labs with an alternative vendor.

25. In particular, the emails that John Doe sent to ValueCommerce, UNICORN, and i-mobile includes the same false and defamatory statements regarding Spider Labs and the SpiderAF software service.

26. Based on the time stamps on the emails, it appears that John Doe sent the emails to MOLOCO, ValueCommerce, UNICORN, and i-mobile within minutes of reviewing information about each company on Spider Labs' website.

27. During its investigation, Spider Labs also discovered that John Doe, again using the alias "Jeff Katzenberg", registered the domain name www.phybbit.jp on or about June 15, 2020—the same day that he sent the emails to Spider Labs' customers.  Until recently, Spider Labs went by "Phybbit."

28. Although, upon information and belief, John Doe registered the domain name www.fightclickfraud.com in February 2020, to date no content has been posted on www.fightclickfraud.com.

29. To the best of Spider Labs' knowledge, contrary to his assertions in the emails to Spider Labs' customers, John Doe has not published a blog of any type on the Internet.

5

## FIRST CLAIM FOR RELIEF
### (Defamation Per Se)

30. Spider Labs incorporates by reference the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. Doe published, or caused to be published, one or more false statements of fact concerning Spider Labs, including in emails sent directly to multiple Spider Labs' customers.

32. Doe intentionally, or with negligent disregard for their falsity and without privilege or authorization, published false and defamatory statements concerning Spider Labs to multiple Spider Labs' customers.

33. Doe intentionally, or with negligent disregard for their falsity, made false and defamatory statements concerning Spider Labs that prejudices Spider Labs in its profession or trade.

34. Doe's statements alleged herein constitute defamation *per se* in violation of the common law of the State of New York as they are injurious to the reputation of Spider Labs in its trade, business and profession.

35. As a result of Doe's defamation, Spider Labs has suffered general damages for harm to reputation and special damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Advantage)

36. Spider Labs incorporates by reference the allegations contained in paragraphs 1 through 35 as if fully set forth herein.

37. Spider Labs has worked tirelessly to develop its reputation as the provider of cutting-edge anti-Ad Fraud services.

6

4816-4667-7954.2

38. Spider Labs' efforts have led it to be well-recognized by Ad Tech companies around the world, including in the United States. This recognition, in turn, has provided Spider Labs with a valuable advantage when soliciting work from existing customer or prospective customers.

39. Doe was fully aware of the existence of Spider Labs' valuable prospective economic advantage, and was fully aware of the potential benefits and advantages to Spider Labs.

40. Doe, through communication and/or conduct, wrongfully, intentionally and consciously interfered with Spider Labs' valuable prospective economic advantage by knowingly publishing false and defamatory remarks to Spider Labs' customers for the express purpose of interfering with Spider Labs' customers business relationship with Spider Labs.

41. Doe, by publishing false and defamatory statements directly to Spider Labs' customers, employed wrongful means to interfere with Spider Labs' prospective economic advantage.

42. Doe, by publishing false and defamatory statements directly to Spider Labs' customers, acted for the sole purpose of inflicting harm on Spider Labs.

43. As a result of Doe's intentional interference with Spider Labs' valuable prospective economic advantage, Spider Labs' has suffered substantial injuries, losses and damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference with a Contractual Relationship)

44. Spider Labs incorporates by reference the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45. Spider Labs has worked tirelessly to develop its reputation as the provider of cutting-edge anti-Ad Fraud services.

46. Spider Labs' efforts have led it to be well-recognized by Ad Tech companies around the world, including in the United States. This recognition, in turn, has allowed Spider Labs to enter into contracts with customers around the world, including in the United States.

47. Doe was fully aware of the existence of Spider Labs' contracts with customers, including by reviewing customer use cases on Spider Labs' website.

48. Doe, through communication and/or conduct, wrongfully, intentionally and consciously interfered with Spider Labs' contracts with its customers by knowingly publishing false and defamatory remarks to Spider Labs' customers for the express purpose of interfering with Spider Labs' customers business relationship with Spider Labs.

49. Doe, by publishing false and defamatory statements directly to Spider Labs' customers, intentionally and improperly interfered with Spider Labs' contractual relationships.

50. Upon information and belief, Doe's intentional and wrongful acts of interference have caused one or more breaches of Spider Labs' contractual relationships.

51. As a result of Doe's intentional interference with Spider Labs' contractual relationships, Spider Labs' has suffered substantial injuries, losses and damages in an amount to be determined at trial.

8

## FOURTH CLAIM FOR RELIEF
**(Injunctive Relief)**

52. Spider Labs incorporates by reference the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53. Doe has engaged in conduct, and continues to engage in conduct, specifically intended to damage Spider Labs' reputation and business.

54. Doe has engaged in conduct, and continues to engage in conduct, specifically intended to damage Spider Labs' relationships with its business customers, including by damaging Spider Labs' reputation.

55. Doe published or caused to be published one or more false statements of fact concerning Spider Labs.

56. The statements are defamatory *per se* because the statements, on their face and without any additional proof, are injurious to the reputation of Spider Labs in its trade and business.

57. Upon information or belief, Doe intends to continue to publish false and defamatory statements concerning Spider Labs in the future.

58. As a result of Doe's actions, Spider Labs has sustained and will continue to sustain irreparable injury.

59. Spider Labs is left without an adequate remedy at law because, among other things, the damage to its existing and prospective customers cannot be determined as a matter of law.

60. Injunctive relief, including in the form of discovery, are the only way to remedy Doe's injurious actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Spider Labs prays that judgment be entered in its favor and against Defendant John Doe on each and every claim asserted herein, and that it be awarded the following relief:

1. Permanent injunctive relief that prohibits Doe from continuing to engage in the conduct complained of herein;

2. Monetary damages, including special damages, in an amount to be calculated at trial;

3. All applicable statutory penalties;

4. Pre-judgment interest;

5. Post-judgment interest;

6. Litigation costs and expenses, including reasonable attorneys' fees; and

7. Any such further preliminary or permanent relief, including equitable relief, as this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff requests a jury on all issues and claims that are triable to a jury.

Respectfully submitted this 15th day of July, 2020.

                                                KUTAK ROCK LLP

                                                *s/ Adam L. Hirsch*
                                                Adam L. Hirsch
                                                1801 California St., Suite 3000
                                                Denver, CO 80202
                                                Tel: 303-297-2400
                                                adam.hirsch@kutakrock.com

                                                *ATTORNEYS FOR PLAINTIFF*